In the Matter of the WELFARE OF
H.M.S. and A.R.S., Children.

In re the Marriage of Scott Allen
SANDERSON, petitioner,
Appellant,

v.

Rhonda Robin SANDERSON, n/k/a
Rhonda Robin Zick,
Respondent.

No. C5-94-1994.

Supreme Court of Minnesota.

Dec. 15, 1995.

Neil R. Tangen, Starbuck, for appellant.

Lance R. Heisler, Detroit Lakes, for respondent.

## OPINION

TOMLJANOVICH, Justice.

On October 10, 1988, H.M.S. was born to Scott and Rhonda Sanderson, then husband and wife. Their second child, A.R.S., was born on November 22, 1990. The Sandersons' marriage was dissolved by a judgment of the Otter Tail County District Court on April 14, 1992. Scott and Rhonda were granted joint legal custody of the children and Rhonda was granted sole physical custody. At this time, H.M.S. was two-and-one-half years old and A.R.S. was six months old.

Subsequently, Scott Sanderson married Stacy Sanderson and Rhonda Sanderson married Larry Zick. Since the time that Rhonda Zick was awarded sole physical custody, Scott and Stacy Sanderson have made a number of reports of physical or sexual abuse of H.M.S. and/or A.R.S. by Rhonda and Larry Zick. One such report, received

by Otter Tail County Social Services in January of 1993, involved possible sexual abuse of H.M.S. by her stepfather Larry Zick.

This report was based on information Stacy Sanderson provided to an Alexandria, Minnesota, early childhood development coordinator. After receiving the report, an Otter Tail County Sheriff's Deputy and an Otter Tail County Child Abuse Specialist conducted an interview with then four-year-old H.M.S. The investigators were unable to determine if any sexual abuse had occurred. H.M.S. was examined by a physician who indicated that there was no medical evidence that H.M.S. had been sexually or physically abused. The deputy's report also noted that this was approximately the eighth report or allegation of some type of physical or sexual abuse originating from the Sandersons regarding H.M.S. None of the reports had been substantiated.

During a visitation with Scott and Stacy Sanderson in early December of 1993, Stacy noticed two to three finger-shaped bruises on H.M.S.'s buttocks while bathing her. After being alerted by the Sandersons, both a Douglas County social worker and a Douglas County Sheriff's deputy spoke with H.M.S. about the bruises. The Crookston Police Department (Polk County) sent an officer to speak with Rhonda Zick.

As a result of the Sandersons' report, on December 17, 1993, Polk County Social Services filed petitions in Polk County District Court alleging that, pursuant to Minn.Stat. § 260.015, subd. 2a(2) & (9), H.M.S. and A.R.S. were children in need of protection or services (CHIPS). The petitions allege that the children have been victims of physical or sexual abuse or reside with a victim of domestic child abuse, and that they are children whose behavior, condition, or environment are such as to be injurious or dangerous to the children or others.

As a result of the CHIPS petitions, on December 30, 1993, Otter Tail County District Court granted Scott Sanderson temporary custody of H.M.S. and A.R.S. Further, on December 30, 1993, Sanderson filed a motion in Otter Tail County for an Ex Parte Order seeking modification of the custody award in the April 14, 1992 Judgment and Decree.

On March 7, 1994, a motion hearing was held in which the modification of custody proceedings were consolidated with the CHIPS proceedings. Also, the previous order granting Scott Sanderson temporary custody was continued and Rhonda Zick was granted supervised visitation with the children.

On July 7 and 8, 1994, an evidentiary hearing was held in Otter Tail County District Court on Scott Sanderson's motion for permanent modification of custody and the CHIPS petitions. During the hearing, Rhonda Zick admitted that the children were in need of protection or services because H.M.S. had been the victim of physical abuse and A.R.S. resides with a victim of domestic child abuse.

Mindy Mitnik, a court-appointed psychologist, testified. She indicated that she could not "determine definitively if sexual abuse did or did not occur." Her written evaluation indicated: "Compared to other evaluations I have completed I would consider the sexual abuse 'possible.' This is less likely than 'probable' but more likely than 'unlikely.'" Mitnik also noted that even though petitioner and his wife reported that H.M.S. is afraid of respondent and her husband, she could detect none of this reported fear while viewing videotapes of H.M.S.'s and A.R.S.'s supervised visitations with Rhonda Zick. Additionally, H.M.S.'s own reports to Mitnik disputed such fear. According to Mitnik, H.M.S. indicated that she misses her mother and although she does not feel very close to Larry Zick, she is not afraid of him.

In its order dated August 22, 1994, the trial court found that Rhonda Zick has been involved in anger management classes since approximately February 1994, and has participated in parenting classes through Otter Tail County Social Services. The current service plan for Rhonda Zick includes individual counseling; completion of parenting classes and an anger management program, which is being incorporated into her individual counseling sessions; maintaining a single living dwelling for herself and the children; learning age-appropriate responses for deal-

ing with the children; and working on being supportive of the children in their current living situation with Scott Sanderson. Rhonda Zick expressed willingness to participate in whatever counseling program the court outlined.

The trial court also found:

1. Clear and convincing evidence was not provided to prove that H.M.S. is a victim of sexual abuse.

2. Pursuant to Minn.Stat. § 260.015, subd. 2a(2)(i) and (ii) and (9), H.M.S. and A.R.S. were children in need of protection or services.

3. Pursuant to Minn.Stat. § 518.18(d)(iii), Scott Sanderson has not shown sufficient evidence that a significant change in circumstances has occurred to warrant a change in the present physical custody arrangement.

The court therefore denied Scott Sanderson's motion for modification of physical custody, but ordered that temporary physical custody of the children would remain with Sanderson until further order of the court. The court placed the children under protective supervision of the Otter Tail County Department of Social Services. The court also ordered Scott and Stacy Sanderson, Rhonda and Larry Zick, and H.M.S. and A.R.S. to participate in a court-outlined therapy program.

The Minnesota Court of Appeals affirmed the trial court in an unpublished opinion. *Sanderson v. Sanderson*, No. C5–94–1994, unpub. op., 1995 WL 130583 (Minn.App. March 28, 1995). In June of 1995, custody of the children was returned to Rhonda Zick. Scott Sanderson now appeals from the part of the August 22, 1994 order maintaining permanent custody of the children with respondent Rhonda Zick.

■ This court's review of custody determinations is limited to whether the trial court abused its discretion by making findings unsupported by the evidence or by improperly applying the law. *Sefkow v. Sefkow*, 427 N.W.2d 203, 210 (Minn.1988). "A trial court is accorded broad discretion in its consideration and disposition of a motion to modify an award of child custody made inci-

dent to a judgment and decree of marital dissolution." *Nice–Petersen v. Nice–Petersen*, 310 N.W.2d 471, 471 (Minn.1981).

■ Appellant argues that the trial court abused its discretion when it found that H.M.S. and A.R.S. were children in need of protection or services, retained temporary custody of the children in Scott Sanderson, and yet denied modification of permanent custody.

Minnesota Statutes § 518.18(d) & (d)(iii) (1994) sets out the criteria which must be met before a court can alter a permanent custody award. Section 518.18 states:

[T]he court shall not modify a prior custody order unless it finds, upon the basis of facts that have arisen since the prior order or that were unknown to the court at the time of the prior order, that a change has occurred in the circumstances of the child or the parties and that the modification is necessary to serve the best interests of the child. In applying these standards the court shall retain the custody arrangement established by the prior order unless:

\* \* \* \* \* \*

(iii) the child's present environment endangers the child's physical or emotional health or impairs the child's emotional development and the harm likely to be caused by a change of environment is outweighed by the advantage of a change to the child.

*Id.*

The trial court specifically found that a change in circumstances significant enough to warrant a change in the present physical custody arrangement had not occurred and that the best interests of the children were served by not altering permanent custody. With regard to the final statutory factor, the trial court found that

[t]here is not sufficient evidence to suggest that the children's custodial arrangement with respondent endangers their physical or emotional health or that it impairs their emotional development \* \* \*. The long term harm that is likely to be caused by a change of environment is not outweighed by the advantage of a change to the children.

304

The trial court made ample and detailed findings of fact to support these conclusions. We find, therefore, that the trial court did not abuse its discretion in refusing to alter the previous award of permanent custody to respondent Rhonda Zick.

It should also be noted that the trial court's decision is consistent with the legislative intent behind a CHIPS finding. Minnesota Statutes § 260.011, subd. 2(a) expresses a clear preference that a child adjudicated in need of protection or services receive necessary care and guidance "in the child's own home" and that the child's family ties be "preserved and strengthened whenever possible." *Id.* Given this legislative guidance, and in view of the fact that the CHIPS adjudication was based on a single occurrence of abusive discipline, we find that the trial court's decision was well thought out and appropriate; there was no abuse of discretion.

Affirmed.